J

COVERT and others *against* IRWIN and another.

*Sunbury.*

IN ERROR.

*Monday,
June 9.*

ERROR to the Common Pleas of *Lycoming* county in ejectment, on which a bill of exceptions was returned to the charge of the Court below.

The errors assigned, were in the charge of the Court below to the jury. No part of the evidence was returned to this Court, except so far as it was stated in the charge. By this it appeared, that the heirs of *John Covert*, the plaintiffs below, claimed under an improvement made by the said *John.* The defendants claimed under *Thomas Procter*, whose title was by warrant and survey. The defendants also alleged, that *John Covert* was the tenant of *Procter*, and therefore, if any improvement was made by him, it enured to the use of *Procter.* And they further alleged, that this

The plaintiff in ejectment cannot recover on the weakness of the defendant's title, he must shew title in himself. Where a new survey is made, calling for the lines of an old survey, there is no occasion to mark the trees anew. *Query,* whether, in general, possession is notice of a claim.

But if there is a sale of land by the sheriff, as the property of A, and B, who is in possession, stand by, knowing that he is represented as the tenant of A, and does not contradict it, he cannot afterwards contest the title of A, with the purchaser.

The Court are not bound to answer questions, unless they are pertinent to the issue, and fairly arising out of the evidence.

1817.

COVERT
and others
v.
IRWIN
and another.

land was sold by the sheriff, as the property of *Procter*, and that it was represented, at the sale, that *John Covert* was in possession as *Procter's* tenant, which was not contradicted by *Covert*.

The plaintiffs' counsel prayed the Court to charge the jury on four points below.

**1.** That if the jury believed, that there were no lines marked on the ground in the survey for *Procter*, under whom the defendants claim, then there was no legal appropriation by *Procter* of the land in question, and the jury ought to find for the plaintiffs.

**2.** That it is the duty of a deputy surveyor to mark the lines and corners of a new survey even when it adjoins old surveys, if such marking be necessary to identify the tract, and can be done without defacing other marks of survey.

**3.** That *John Covert's* residing upon the premises, was notice to the defendants of his claim, so as to put them upon inquiry to ascertain it.

**4.** That a party agreeing to contract under mistake, or under circumvention, is not bound by it.

The charge of the Court was as follows :—

" 1. The counsel for the defendant have contended, that *Covert* must be considered as a tenant holding under *Thomas Procter*, under whom the defendant claims, and that as such the improvement was made for *Procter*.

" 2. If he had any claim when the land was levied upon, condemned and publicly sold as the property of *Thomas Procter* in possession of *John Covert;* he should not have stood by and permitted a *bona fide* purchaser to buy and pay his money for this land without giving him notice.

" 3. Improvement can give no title, unless made upon vacant land. As to the first point, that *John Covert* was *Thomas Procter's* tenant. You have in evidence a letter, dated the 4th *October*, 1804, written by *Covert* to *Procter*, by which *Covert* acknowledges the land to be *Procter's* ; he wishes to know when *Procter* can come up ; he wishes to purchase or make some bargain, as certain improvements are necessary to be made upon the land. In this letter he does not pretend to hold adverse to *Procter* ; and this letter does appear to be predicated upon some previous conversation or argu-

1817.

Covert
and others
v.
Irwin
and another,

ment. If you should be of opinion, that this improvement was made by *Covert*, as tenant of *Procter*, the plaintiff has no right to the land, for the improvement would be *Procter*'s. 2. It appears this land was levied upon, condemned, and publicly sold by the sheriff as the property of *Thomas Proctor*, *John Covert* in possession. If you are of opinion, that from this manner of sale, *John Covert* was represented to the public as tenant of *Procter;* if he was not the tenant, but had a claim of his own, and stood by and permitted a purchaser to buy this land and pay his money for it, without giving him any notice that he intended to claim it as an improver, it was a fraud upon the purchaser; and taking this circumstance in connection with the letter, it raises a presumption, that *Covert*, at the time of the sale to the defendant, did consider himself holding under *Procter*, and had not at that time thought of setting up an improvement right. The Court, therefore, do not think that the plaintiffs by any means have made out a clear case. 3. Whether this land was vacant or not at the time of the commencement of this improvement. To determine upon that question it will be necessary to consider the title of the defendant. Upon his part there has been given in evidence a warrant, dated the 11th *October*, 1785, in the name of *Thomas Procter*, for 300 acres of land adjoining colonel *Thomas Hartley* and *Jesse Weaks* upon the head of *Spring Creek*, in *Northumberland* county, and another warrant of the same date, in the name of *Francis Procter*, esq. for 300 acres of land, adjoining lands of *Joseph Shippen*, esq. in right of *Michael Dordus*, *White Deer* township, *Northumberland* county. It appears by the return of survey, that upon the 3d *May*, 1786, this land was surveyed by *Joseph Wallis*, deputy surveyor, upon the warrant in the name of *Thomas Procter*, 362¼ acres, and upon the warrant in the name of *Francis Procter*, 335¾ acres, adjoining *Jonathan Taylor* and *Michael Dordus*. The return of survey appears to be made by *Joseph Wallis*, but at what time does not clearly appear. It is in evidence, that *Wallis* died in 1795, and the certificates taken out are in 1798, at which time the return was in the office. It must have been made before the decease of Mr. *Wallis*, it was certainly made before the commencement of the plaintiff's improvement. A certificate from the books of the land office shewing, that the purchase money of both warrants was paid by *Thomas Procter* has been produc-

ed, and a regular title from him to the defendant has been shewn by judgment, execution, and sheriff's deed. *In answer to which, the plaintiff's counsel contend, that Thomas Procter's returns of survey are fraudulent, and that he never had an actual survey on the ground.* This is a fact which the jury are to judge of from the evidence and not the Court. It is, however, proper for the Court to remark, that a return of survey is *prima facie* evidence, that such survey was made, and that since the revolution, deputy surveyors have generally acted under the obligation of an oath or affirmation, and that before you should believe, that *Joseph Wallis* would be guilty of a violation of this obligation, satisfactory evidence should be produced to shew, that no survey had been made. *There is a variety of ways to do this, but one of the most certain is, when a deputy surveyor acknowledges he made no survey. There is no such evidence in this case.* It is not to be expected after a great lapse of time, that every tree called for by the returns of survey, could be found. The trees may be removed by decay, by the wind, by the fire and by the axe, and upon the lines of this tract, Mr. *Batton* found marked trees which had recently been cut down before he retraced the lines. Mr. *Batton* says, that whenever he went upon the lines, he found marked trees where there were trees to mark. There has been considerable evidence upon this point, of which you are to judge, but most of the witnesses concur, that there were line trees to be found, except upon the line cleared by *Covert*. *The counsel for plaintiffs have contended, that these lines were marked for the adjoining tracts. A division line between two tracts is considered the line of each tract, and if any of the other tracts are surveyed before this, it would not have been proper for the surveyor to deface those lines, they become the lines of both tracts when called for by both returns. But if you should be of opinion, that the plaintiffs have shewn no title, it does not rest with them to dispute this fact of survey or no survey.* If on the other hand, you should be of opinion, that the plaintiffs have shewn a good title by one or more improvements, *you are then to determine as a matter of fact, whether there has or has not been an actual survey from all the circumstances. If no survey has ever been made, this land then would be vacant, and an improver might acquire a right to pre-emption of the land;*

but improvement can give no title after the land has been legally acquired by another person."

*Bellas* and *Watts*, for the defendants.

1. The Judge erred in leaving it to the jury to decide whether there was a tenancy or not. This was matter of law. They cited 4 *Cranch*, 69. 73. 3 *Day's Cases*, 353. 2 *Johns. Cases*, 153. 223. 4 *Binn.* 337. Here *Covert* had settled on the land without permission of *Procter*. He wrote a letter to *Procter*, and the legal effect of that letter ought to have been decided by the Court, but was erroneously left to the jury.

2. The Court was wrong in saying, that the best evidence against a survey, was the acknowledgment of the deputy surveyor, that he had made no survey. Whereas the defendant would not have been permitted to prove, that he had made no survey.

3. We prayed the Court for their opinion on four points, which were either not answered, or answered erroneously, and to the fourth point, there is not the slightest answer.

*Greenough* and *Hall*, contra. Every question proposed to the Court was answered except the last, and that was irrelevant, for there was no evidence to apply it to. But, even that was substantially answered; for the jury was instructed to find for the plaintiffs, if no survey had been made for *Procter*. On the other points, the Court left to the jury what was their province. Whether tenancy or not, was a mixed question of law and fact. The fact of survey or not, was also fully left to the jury.

TILGHMAN C. J. The errors assigned in this case, are in the charge of the Court below, to the jury. We have not the evidence, except as it is stated in the charge, so that we must take it as there stated. It appears, then, that the heirs of *John Covert*, (the plaintiffs below,) claim under an improvement made by the said *John*. The defendants claim under *Thomas Procter*, whose title was by warrant and survey. The defendants also allege that *John Covert* was the tenant of *Procter*, and therefore if any improvement was made by him, it enured to the use of *Procter*. And further, they allege that this land was sold by the sheriff, as the

1817.

COVERT
and others
v.
IRWIN
and another.

property of *Procter*, and that it was represented at the sale, that *John Covert* was in possession, as *Procter*'s tenant, which was not contradicted by *Covert*.

The plaintiff's counsel prayed the Court to charge the jury on four points, as follows.

1. That if the jury believe, there were no lines marked on the ground, on the survey for *Procter*, under whom the defendants claim, then there was no legal appropriation by *Procter*, of the land in question, and the jury ought to find for the plaintiffs.

2. That it is the duty of a deputy surveyor to mark the lines and corners of a new survey, even where it adjoins old surveys, if such marking be necessary to identify the tract, and can be done without defacing other marks of survey.

3. That *John Covert*'s residing upon the premises, was notice to the defendants of his claim, so as to put them upon inquiry to ascertain it.

4. That a party agreeing to contract, under mistake, or under circumvention, is not bound by it.

1st. As to the first point, the plaintiffs' counsel asked too much : Because, although no appropriation of the land had been made by *Procter*, it did not follow that the plaintiffs were to recover. In order to entitle the plaintiffs to recover, it was necessary to shew, not only that *Procter had made no appropriation*, but that *John Covert had made an appropriation*, because the plaintiffs cannot recover on the weakness of the defendant's title : he must shew title in himself. The Court charged the jury properly. They directed them to consider, whether *Procter*'s survey was made on the ground. If it was, there was an end of the business, because this survey was prior to *Covert*'s improvement. But if it was not made on the ground, the jury were next to consider, whether *John Covert* had made an improvement for his own use, and if he had, as I understand the charge, the verdict was to be for the plaintiffs.

2d. The opinion of the Court, on its second point, was, that where a new survey is made, calling for the lines of an old survey, there is no occasion to mark the trees anew. The law is so ; double marks are apt to make confusion, and the new survey is as well identified by referring to the old lines, as if each boundary tree was marked over again. Whether the new survey was actually made on the ground,

the Court submitted to the jury as a fact to be decided by them, and that was as much as the plaintiffs' counsel could ask.

3d. The plaintiffs' counsel supposed, that the circumstance of *John Covert*'s residing on the land, was, at all events, notice of his claim. Granting that, in general, possession is notice of claim (a principle not necessary to be now decided), there may be circumstances which throw a duty on the tenant in possession; such for instance as are alleged in this case; a sale of the land by the sheriff, as the property of *Procter*, whose tenant *Covert* was said to be, *Covert* standing by, and not contradicting it. The Court had a right to take this circumstance into consideration, in delivering their charge, and I think they were right in the opinion, that if *Covert* did so stand by, knowing that he was represented as *Procter*'s tenant, and not contradicting it, he could not afterwards contest the title of *Procter* with the purchaser.

4th. It appears to me, that the 4th point was proposed in so general and so abstract a form, that the Court were not bound to answer it. They are bound to answer no question which is not pertinent to the issue, and fairly arising out of the evidence. But there is no evidence appearing on this record, which could give rise to a question of mistake or circumvention. If there had been, it was the business of the plaintiffs' counsel, in stating their proposition, to mention and refer to it. Not having done so, this Court cannot take notice of it.

These are the principal objections urged on the part of the plaintiffs; and they embrace all the points on which the opinion of the Court of Common Pleas was asked. Some minor points were made in the argument here, into which I do not think it necessary to enter. My opinion on the whole, is, that no error appears on the record, and therefore the judgment should be affirmed.

*N. B.* Judge YEATES (deceased) concurred in this opinion, but died before it was delivered.

GIBSON J. concurred.

DUNCAN J. concurred.

Judgment affirmed.

*Margin note:* 1817. COVERT and others *v.* IRWIN and another.